IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| VICTOR LEAL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:20-CV-124-Z |
| | § | |
| ALEX M. AZAR II, et. al., | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS, DENYING
STATE DEFENDANTS' MOTION TO DISMISS, AND REMANDING PLAINTIFFS'
CLAIM AGAINST STATE DEFENDANTS TO STATE COURT**

Before the Court are the federal defendants'[1] Motion to Dismiss (ECF No. 18) and Reply
(ECF No. 25) and the state defendants'[2] Motion to Dismiss (ECF No. 16) and Reply (ECF No.
24). Also before the Court are Plaintiffs' Amended Complaint (ECF No. 15) and Responses (ECF
Nos. 21, 22). For the following reasons, the federal defendants' Motion to Dismiss is GRANTED
and Plaintiffs' claims against them are DISMISSED for lack of jurisdiction. Plaintiffs' remaining
claim against the state defendants is REMANDED to the 181st District Court, Potter County. State
defendants' Motion to Dismiss is DENIED for lack of jurisdiction. Both state and federal
defendants' original Motions to Dismiss (ECF Nos. 12, 14) are DENIED as moot.

**I. FACTUAL BACKGROUND**

The Affordable Care Act requires group health plans and health-insurance issuers to cover

"preventive care and screenings . . . as provided for in comprehensive guidelines supported by the

---

[1] The federal defendants are the United States, Alex M. Azar II in his official capacity as Secretary of Health and
Human Services, Steven T. Mnuchin in his official capacity as Secretary of the Treasury, and Eugene Scalia in his
official capacity as Secretary of Labor.
[2] The state defendants are the Texas Department of Insurance and Kent Sullivan in his official capacity of Texas
Commissioner of Insurance.

1

Health Resources and Services Administration for purposes of this paragraph." *See* 42 U.S.C. § 300gg-13(a)(4). Preventive care and screenings must be provided without any cost-sharing requirements such as deductibles or co-pays. In 2011, the Health Resources and Services Administration ("HRSA") issued guidelines requiring that all FDA-approved contraceptive methods be covered as "preventive care" under 42 U.S.C. § 300gg-13(a)(4). Consequently, the Secretary of Health and Human Services, the Secretary of the Treasury, and the Secretary of Labor issued notice-and-comment regulations to implement HRSA's decision to require private insurers to cover contraception. *See* 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715–.2713(a)(1)(iv); 26 C.F.R. § 54.9815–.2713(a)(1)(iv). These rules are commonly known as the federal "contraceptive mandate."

In Texas, a health insurance provider offering a health benefit plan that covers prescription drugs must also provide coverage for prescription *contraception* drugs at no additional cost to an insured. TEX. INS. CODE §§ 1369.104–.105. A limited exception to this requirement exists if the health insurance plan is issued by a religious organization. *Id.* § 1369.108. But overall, Texas prohibits insurance providers from excluding prescription contraception drugs unless the health benefit plan excludes coverage for all prescription drugs. *See id.* §§ 1369.101–.109. These requirements are commonly known as Texas' "contraceptive-equity laws."

Plaintiff Victor Leal initially brought this action in Texas state court, challenging (1) the federal contraceptive mandate and (2) Texas' contraceptive-equity laws. The federal defendants properly removed this action to federal court pursuant to 28 U.S.C. § 1442. ECF No. 1. In response to state and federal defendants' motions to dismiss, Plaintiffs amended their complaint to allege (1) the federal defendants violated (a) the Appointments Clause, (b) the nondelegation doctrine, and (c) the Religious Freedom Restoration Act; and (2) the state defendants violated the Texas

Religious Freedom Restoration Act. ECF No. 15. The amended complaint also added two additional plaintiffs, Patrick Von Dohlen and Kim Armstrong. *Id.* Both state and federal defendants filed renewed motions to dismiss.

## II. LEGAL STANDARDS

### A. Dismissal under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction which possess only that power authorized by Constitution and statute. *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 435 (5th Cir. 2019). "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).

When a motion to dismiss for lack of subject-matter jurisdiction "is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Further, where a complaint could be dismissed under Rule 12(b)(1) or 12(b)(6), "the court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim . . . ." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). By doing so, courts avoid issuing advisory opinions. *Steel Co.*, 523 U.S. at 101. Additionally, this prevents courts without jurisdiction "from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks

3

only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.*

## B.  Derivative Jurisdiction

Under the doctrine of derivative jurisdiction, "when a case is removed from state to federal court, the jurisdiction of the federal court is derived from the state court's jurisdiction." *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350 (5th Cir. 2014). "If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922). The doctrine applies to cases removed under 28 U.S.C. § 1442; *Lopez*, 749 F.3d at 351.

## C.  Supplemental Jurisdiction and Remand

Supplemental jurisdiction is codified at 28 U.S.C. § 1367. Section 1367 gives courts discretion to exercise jurisdiction over pendant state law claims when: "(1) federal question jurisdiction is proper, and (2) the state law claims derive from a common nucleus of operative facts." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 221 (5th Cir. 2012). Only after finding that original jurisdiction exists over at least one claim can a court decide whether to exercise its discretion to decline supplemental jurisdiction. 28 U.S.C. § 1367(a). Section 1367(c) sets out four factors that control this Court's discretion over state law claims: whether (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *Id.* at § 1367(c).

Additionally, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). If "the only federal-law claim in this case allowing its removal to federal court has been eliminated . . . the district court has discretion to remand to state court if it determines that it would be inappropriate to retain jurisdiction." *Redburn v. City of Victoria*, 898 F.3d 486, 496–97 (5th Cir. 2018).

### III. ANALYSIS

Though seldomly raised, the derivative-jurisdiction doctrine has continued life in the Fifth Circuit when suits are removed pursuant to 28 U.S.C. § 1442. *Lopez*, 749 F.3d at 351. In their motion to dismiss, the federal defendants note that generally the United States and its officers have sovereign immunity from suit unless there has been a waiver of immunity. Because Plaintiffs never asserted a waiver in state court, the federal defendants argue the state court never acquired jurisdiction over them. According to the federal defendants, when this case was removed, this Court also acquired no jurisdiction over them.

On the other hand, Plaintiffs initially concede their claims against the United States must be dismissed because the United States had sovereign immunity in state court. But Plaintiffs counter that the state court had jurisdiction over the Cabinet Secretaries under "the *Ex parte Young* exception to sovereign immunity." ECF No. 22. Plaintiffs contend sovereign immunity does not protect federal officers who are alleged to be acting in violation of federal law. Thus, the state court had jurisdiction over the Cabinet Secretaries. As a result, Plaintiffs contend the federal court obtained jurisdiction over the Secretaries when the federal defendants removed the suit.

The Court agrees with the federal defendants. Although the "*Young* principle" can defeat a claim of sovereign immunity, it is inapplicable here. *Young* provides equitable injunctive relief. Under binding Fifth Circuit precedent, a state court cannot give such relief against a federal officer.

### A. Sovereign immunity generally bars suits against the federal government

"A federal court has no subject-matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit." *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011). The same is true of suit in state courts. *Lopez*, 749 F.3d at 351 (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996)). "Claims against officers of the United States in their official capacities are actually claims against the sovereign. Where applicable, therefore, sovereign immunity precludes claims against the officers as well." *Danos*, 652 F.3d at 581 (citation omitted).

Plaintiffs admit the United States itself had sovereign immunity and thus the state court never had jurisdiction over it. As a result, Plaintiffs agree the United States must be dismissed under the doctrine of derivative jurisdiction. Plaintiffs vigorously contend, however, the claims against the Secretaries in their official capacities may go forward. Plaintiffs maintain the "*Ex parte Young* principle" precludes application of sovereign immunity to the Secretaries. If this is true, the state court would have had jurisdiction over the Secretaries and so would this Court. Therefore, the Court examines the *Young* doctrine and its federal counterpart, the *Larson* doctrine.

### B. The *Young* and *Larson* doctrines show *federal* courts have the power to issue injunctions against federal and state defendants

The *Young* doctrine is fairly straightforward. A *federal court* is not barred by the Eleventh Amendment from enjoining *state officers* from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation. *Ex parte Young*, 209 U.S. 123 (1908); 14C CHARLES A. WRIGHT & ARTHUR R. MILLER,

6

FEDERAL PRAC. & PROC. § 4232 (4th ed. 2020). At its core, the *Young* doctrine is about federal courts enforcing federal law on state actors. *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("*Ex Parte Young* gives life to the Supremacy Clause.") Indeed, every formulation of the doctrine the Court has reviewed is about enjoining state actors. *See, e.g.*, *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326 (2015) ("It is true enough that we have long held that *federal* courts may in some circumstances grant injunctive relief against *state* officers who are violating, or planning to violate, federal law.") (emphasis added); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 495 (5th Cir. 2020) (Oldham, J., concurring) ("[Under *Young*], a *federal* cause of action was available to seek equitable relief against *state* officers.") (emphasis added); 14C WRIGHT & MILLER, FEDERAL PRAC. & PROC. §§ 3524.3, 4231, 4232, 8352. Plaintiffs cite zero cases where a *state* court applied *Young* to a federal officer, and the Court has not located any such cases.

Perhaps recognizing *Young* itself does not directly apply, Plaintiffs argue the "principle" of *Young* applies to federal officers. This is true, but only to a certain extent. The Supreme Court states "[t]he ability to sue to enjoin unconstitutional actions by *state and federal* officers is a creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong*, 575 U.S. at 327 (emphasis added). But the inquiry does not end there. The question must be asked: who has this equitable power to enjoin federal officials?

Federal officials, notwithstanding sovereign immunity, may be enjoined under the *Larson* doctrine — the federal counterpart to *Young. Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949). While these two doctrines are similar, they are not identical. *E.V. v. Robinson*, 906 F.3d 1082, 1090 n.8 (9th Cir. 2018) ("The [*Larson*] framework is not identical to the [*Young*] fiction that is commonly invoked in the Eleventh Amendment context."). Under the *Larson* doctrine, there are two types of suits that can proceed against federal officers in their official

capacities: (1) suits alleging a federal official acted *ultra vires* of statutorily delegated authority; and (2) suits alleging "the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional" *Larson*, 337 U.S. at 689–90. As the Supreme Court stated, "in case of an injury threatened by his illegal action, the officer cannot claim [sovereign] immunity from injunction process." *Id.* at 690 (quoting *Philadelphia Co. v. Stimson*, 223 U.S. 605, 620 (1912)).

It is an open question whether the 1976 amendments to the APA abrogated the *Larson* doctrine in suits against federal agency officials. *See, e.g.*, *Robinson*, 906 F.3d at 1092–93; *Danos*, 652 F.3d at 582; *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). Most challenges to federal agency action are now brought via the APA, so there has been little need to litigate the margins of the *Larson* doctrine. But because doing so does not affect the outcome of the present motion, the Court will assume the *Larson* doctrine still applies in suits challenging federal agency action.

Plaintiffs once again fail, however, to cite any cases where a *state* court applied the *Larson* doctrine against a federal officer, and the Court has located no such case. To summarize, it appears equitable injunctive relief is available against state and federal officers in federal court. But nothing has been shown that proves *state* courts can provide this equitable remedy against federal officers.

## C. Fifth Circuit precedent bars state courts from exercising injunctive power over Cabinet officials

Because *Young* and *Larson* do not answer the above question, the Court must decide whether state courts can issue injunctions against federal officers. After examining history and relevant case law, the Court determines a state court within the Fifth Circuit has no injunctive power over federal officers.

Most of the early cases that contain any discussion of state court power over federal officers arose out of an effort by state courts to grant habeas corpus for prisoners or other persons in the

8

custody of federal officers. Richard S. Arnold, *The Power of State Courts to Enjoin Federal Officers*, 73 YALE L. J. 1385, 1386 (1964). The definitive decision on the matter is from *Tarble's Case*, 80 U.S. (13 Wall.) 397 (1872). There, Justice Field held a state court lacked jurisdiction to issue a writ of habeas corpus that would have compelled an officer of the United States Army to release a soldier who had allegedly enlisted under the legal age. *Id.* at 411–12.   Similarly, the Supreme Court in *McClung v. Silliman* held a state court lacked jurisdiction over a suit for mandamus that would have compelled a federal officer to convey real property. 19 U.S. (6 Wheat.) 598, 605 (1821). Both cases center around the idea that a federal official "can only be controlled by the power that created him." *Id.*

On the other hand, state courts have jurisdiction to award damages against federal officers. *Teal v. Felton*, 53 U.S. (12 How.) 284 (1852). Additionally, state courts can order actions at law like replevin and ejectment which are similar in substance to injunctions. *Slocum v. Mayberry*, 15 U.S. (2 Wheat.) 1 (1817). Furthermore, state criminal jurisdiction over federal officers has never been questioned, although Congress has given federal officers a broad right of removal. 28 U.S.C. § 1442; *Tennessee v. Davis*, 100 U.S. 257 (1879).

As a result, the relatively few cases on the extent of state court injunctive power over federal officers are inconclusive. Indeed, the Supreme Court has never decided the matter. It has only noted the matter is of "grave consequence." *Brooks v. Dewar*, 313 U.S. 354, 360 (1941). Professor Fallon has described the issue as "one of the most fascinatingly arcane debates in the law and theory of federal courts." Richard Fallon, *The Ideologies of Federal Courts Law*, 74 VA. L. REV. 1141, 1202 (1988).

Instead of having to pick a side in this "arcane debate," the Court can rely on Fifth Circuit precedent to decide the question in this case. In *Dinkens v. Attorney General*, 285 F.2d 430 (5th

Cir. 1961), the Fifth Circuit summarily affirmed the district court's "well-reasoned opinion" in the below case of *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960). In *Rogers*, the Attorney General of the United States applied to the United States District Court for the Middle District of Alabama for an order permitting him, pursuant to Title III of the Civil Rights Act of 1960, to inspect voting records in the possession of the Board of Registrars of Montgomery County. 187 F. Supp. at 851. At the same time, the Attorney General of Alabama sued the Attorney General of the United States in a state court. There, he obtained an injunction against the federal Attorney General prohibiting the enforcement of Title III on the ground that Title III was unconstitutional. *Id.* The federal Attorney General then removed the state court suit to the Middle District of Alabama, where his own case was pending. He moved the district court to dissolve the injunction and dismiss the state court suit. The district court granted the motion, and it was this decision that the Fifth Circuit summarily affirmed.

In its opinion, the district court made the sweeping statement a state injunction was "in violation of the basic legal principle that state courts are *without jurisdiction* to review the discretion or enjoin the acts of federal officers." *Id.* at 852 (emphasis added) (citing *Tarble's Case* in support). Just a year later, the Fifth Circuit clarified exactly what the extent of *Rogers* is. "Thus, just as plainly as it could be said, we have decided that the State of Alabama had no power to entertain a suit seeking to review the discretion of or enjoin the acts of the Attorney General of the United States." *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962); *see, e.g.*, *Pavlov v. Parsons*, 575 F. Supp. 393, 396 (S.D. Tex. 1983) (holding state court had no jurisdiction to enter an injunction against a federal official and applying derivative-jurisdiction doctrine to dismiss the claim once removed to federal court).

This Court sees no reason not to follow these precedents. The similarities between the cases are dispositive. In *Rogers*, it was the Attorney General, a Cabinet-level official, who was enjoined by a state court from acting pursuant to a statute that the plaintiff alleged to be unconstitutional. Here, Plaintiffs initially requested a state court to enjoin three Cabinet-level officials from acting pursuant to a statute Plaintiffs allege to be unconstitutional. As this Court is bound to faithfully apply Fifth Circuit precedent, the Court finds the state court in this case had no jurisdiction over the federal defendants. Consequently, this Court acquired no jurisdiction over them upon removal.

Accordingly, the Court dismisses the claims against the federal defendants for lack of jurisdiction. It is true the text of 28 U.S.C. § 1447 requires "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In this case, remand would be ineffective and futile, however, because the Court has determined the state court has no jurisdiction. This accords with the Fifth Circuit's holding in *Lopez*, in which it "affirm[ed] the district court's holding that it was bound by extant Supreme Court precedent *to dismiss* Sentrillion's claims against the United States under the derivative jurisdiction doctrine." *Lopez*, 749 U.S. at 351 (emphasis added).

### D. Because the claims against the federal defendants have been dismissed, the Court remands the claim against the state defendants to state court

With the federal defendants dismissed for lack of jurisdiction, the Court must decide whether supplemental jurisdiction exists over the remaining state law claim and, if it does exist, whether the Court should decline to exercise supplemental jurisdiction. In *Lopez*, the Fifth Circuit kept open the question whether remand for remaining pendant claims was required under 28 U.S.C. § 1447(c) or whether it was discretionary under the 28 U.S.C. § 1367 and common-law factors. *Lopez*, 749 F.3d at 351–52.

11

For the following reasons, the Court finds supplemental jurisdiction does not exist because there is no claim over which the Court had original jurisdiction. The case must be remanded under Section 1447(c). Even if supplemental jurisdiction does exist, the Court finds the statutory and common-law factors weigh in favor of declining to exercise supplemental jurisdiction over the remaining claim.

Section 1367's plain language states supplemental jurisdiction only exists if the district court has original jurisdiction over at least one claim in the case. 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts *have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims . . . .") (emphasis added). In this case, the Court dismissed Plaintiffs' claims against the federal defendants for lack of jurisdiction. These claims were the only claims over which this Court *could* have had original jurisdiction.[3] But these claims were dismissed *supra* pursuant to the derivative-jurisdiction doctrine. Thus, there was never a claim within the Court's original jurisdiction. The Court accordingly must remand the remaining state claim under Section 1447. *Id.* ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Even if the doctrine of derivative jurisdiction does not bar the existence of supplemental jurisdiction, the Court declines to exercise it over the remainder of this case. Section 1367 lays out the four factors — listed above in Part II(C) — the Court may consider when declining to exercise supplemental jurisdiction. In addition to these statutory factors, the Supreme Court has instructed

---

[3] The Court has no original jurisdiction over Plaintiffs' state law claim for three reasons. First, no diversity jurisdiction exists between Plaintiffs (who are all residents of Texas) and the state defendants. Second, there is no federal question jurisdiction because it is a state law claim. Third, *Young* is inapplicable here because *Young* does not apply in cases where plaintiffs are alleging that state actors are violating state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 111 (1984).

federal courts to weigh the value of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon*, 484 U.S. at 350.

The Fifth Circuit holds that district courts have "wide discretion" to decline to exercise supplemental jurisdiction over state law claims once all federal claims have been dismissed. *See Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). Additionally, the Supreme Court has noted that when the federal claims are eliminated before trial, the *Carnegie-Mellon* factors will normally "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n. 7.

Here, the Section 1367 factors and the *Carnegie-Mellon* factors weigh heavily in favor of declining to exercise supplemental jurisdiction. As for the Section 1367 factors, the Court has dismissed all claims against the federal defendants which were the only claims that had an arguable basis for original federal jurisdiction. Additionally, the only remaining claim is a state law claim, so issues of state law clearly predominate. Moreover, there are no Section 1367 factors that weigh in favor of keeping the claims in federal court.

The *Carnegie-Mellon* factors also point toward declining to exercise supplemental jurisdiction. The case is in the very early stages of litigation, the discovery process has not yet started, and no trial date has been set. As a result, judicial economy will not be wasted by remanding this case. It is fair for these Plaintiffs to litigate in state court — their original forum of choice. Lastly, the state defendants would also prefer to be in state court considering their vigorous invocation of state sovereign immunity in federal court. Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state claim and remands the case back to state court.

13

## IV. CONCLUSION

For the foregoing reasons, the federal defendants' Motion to Dismiss is GRANTED. Plaintiffs' claims against the federal defendants are DISMISSED without prejudice for lack of jurisdiction. Plaintiffs' remaining claim against the state defendants is REMANDED to the 181st District Court, Potter County. State defendants' Motion to Dismiss is DENIED for lack of jurisdiction. Both state and federal defendants' original Motions to Dismiss (ECF Nos. 12, 14) are DENIED as moot.

**SO ORDERED**.

September 24, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE